IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.L., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>PLEASANTON UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No. 22-cv-03036-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

Plaintiff A.L., by and through her parent and guardian ad litem, Joseph Lain ("Plaintiffs") bring various claims against two public educational entities, the Pleasanton Unified School District ("PUSD") and the Contra Costa County Office of Education ("CCCOE"; together, the "Defendants"), for failure to provide A.L. with an appropriate education. The Court granted in part Defendants' motions to dismiss Plaintiffs' original complaint with leave to amend. A.L. v. Pleasanton Unified Sch. Dist., No. 22-cv-03036, 2022 WL 1652814, at *8 (N.D. Cal. Oct. 28, 2022) [hereinafter Pleasanton I]. PUSD and CCCOE now move to dismiss three causes of action in the First Amended Complaint ("FAC") for failure to state a claim: breach of contract (claim III), breach of the covenant of good faith and fair dealing (claim IV), and fraud (claim V). CCCOE Mot. (dkt. 37); PUSD Mot. (dkt. 41). As explained below, finding this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), the Court DENIES Defendants' motions to dismiss as to Plaintiffs' claim for breach of contract (claim III), GRANTS Defendants' motions to dismiss as to Plaintiffs' claim for breach of the covenant of good faith and fair dealing (claim IV) with leave to amend, and GRANTS Defendants' motions

to dismiss as to Plaintiffs' claim for fraud (claim V) with leave to amend.

## I.  BACKGROUND

### A.  Summary of Plaintiffs' Factual Allegations

A.L. is a minor child with Wolf-Hirschhorn Syndrome. FAC (dkt. 36) ¶ 17. She "requires highly specialized and highly individualized supports to participate in the world," including at school. Id. ¶ 20.

In July 2019, A.L.'s father, Joseph Lain, entered into an agreement with PUSD on behalf of A.L., recognizing that CCCOE's Mauzy School would be her educational placement. Id. ¶ 21. In August 2019, A.L. was offered an Individual Education Plan ("IEP"), which codified the July 2019 agreement and stated, among other things, that A.L. was entitled to an individual nurse/aide, speech therapy, physical therapy, vision therapy, and adaptive physical education. Id. ¶¶ 26. In October 2019, Lain filed a due process complaint with the California Office of Administrative Hearings (OAH), alleging denial of free, appropriate public education (FAPE), because the school had failed to provide a nurse/aide pursuant to the August 2019 IEP. Id. ¶ 29. In April 2020, Plaintiffs filed suit against PUSD, CCCOE, and various individual defendants in the Northern District. Id. ¶¶ 33–34; see also Lain v. Pleasanton Unified Sch. Dist., 20-cv-2350 (N.D. Cal.).

In March 2021, the parties entered into a settlement agreement ("the Agreement"). FAC ¶¶ 37–39; id. Ex. 2. To implement the August 2019 IEP, PUSD and CCCOE agreed to terms to further A.L.'s education at the Mauzy School, including hiring a backup nurse and a 1:1 aide/ licensed vocational nurse ("LVN"), holding collaboration meetings with Lain to discuss A.L.'s schooling and care, and purchasing equipment. Id. ¶ 44. In exchange, Plaintiffs agreed to release their claims against PUSD and CCCOE and seek dismissal of the pending federal and OAH actions. Id. ¶ 49.

Almost immediately, Plaintiffs noticed compliance issues. In March 2021, A.L.'s LVN/aide quit, and Defendants failed to replace them promptly, instead hiring a nurse to attend only to A.L.'s health requirements and not her learning needs. Id. ¶ 50. Defendants also failed to supply equipment under the terms of the Agreement. Id. ¶ 51. Though

Defendants made attempts to provide for A.L.'s needs, such arrangements did not last, and Jeni Rickard, PUSD's Assistant Special Education Director, informed Plaintiffs that A.L. would not be receiving a 1:1 aide when she returned to school in-person. Id. ¶ 58.

In November 2021, Plaintiffs filed a due process complaint with the OAH, alleging violations of IDEA and FAPE, as well as contract violations relating to the Agreement. Id. ¶ 68. In January 2022, Plaintiffs filed a notice of claim with PUSD and CCCOE for fraud and contract violations arising out of the Agreement. Id. ¶ 73. In February 2022, OAH dismissed Plaintiffs' most recent due process complaint, finding that it lacked jurisdiction to hear Plaintiffs' claims. Id. ¶¶ 83–84.

### B. Procedural History

Plaintiffs originally brought this suit against PUSD, CCCOE, and various named defendants. Complaint (dkt. 1). PUSD and CCCOE moved to dismiss the original complaint and, in the alternative, moved for a more definite statement. CCCOE Mot. (dkt. 24); PUSD Mot. (dkt. 25). While the Court denied PUSD's motion as to Plaintiffs' claim alleging denial of FAPE (claim II), it granted Defendants' motions to dismiss Plaintiffs' state-law claims (claims III–V) with leave to amend because Plaintiffs failed to allege compliance with the California Government Tort Claims Act. Pleasanton I, 2022 WL 1652814, at *4. However, the Court granted Defendants' motions without leave to amend as to the state-law claims against named individual defendants because they were not parties to the Agreement. Id. Finally, the Court granted Defendants' motions for a more definite statement as to the claim for a "Declaration Against Individuals."[1] Id.

In the FAC, Plaintiffs allege five causes of action: a claim under 20 U.S.C. § 1415(i)(2) of the IDEA seeking reversal of the February 2022 OAH decision against CCCOE and PUSD (claim I); a claim alleging denial of FAPE against CCCOE and PUSD

---

[1] Plaintiffs do not reallege any claims against named Individual Defendants or their "Declaration Against Individuals" claim. See FAC. Instead, Plaintiffs state that "[t]he true names and capacities of defendants sued as DOES 1 through 25 are unknown to Plaintiffs, and Plaintiffs pray leave to amend to allege the true names and capacities when they are ascertained." Id. ¶ 15.

3

1  (claim II); a claim for breach of the Agreement against CCCOE, PUSD, and DOES 1 to 25
2  (claim III); a claim for breach of the implied covenant of good faith and fair dealing
3  against CCCOE, PUSD, and DOES 1 to 25 (claim IV); and a claim for fraud against
4  CCCOE, PUSD, and DOES 1 to 25 (claim V).  See FAC ¶¶ 100–41.  On December 2,
5  2022, CCCOE filed its motion to dismiss, seeking only dismissal of Plaintiffs' state-law
6  claims (claims III–V).  See CCCOE Mot.  PUSD filed its motion on December 8, 2022,
7  seeking the same relief.  See PUSD Mot.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion.  Id. (citing Twombly, 550 U.S. at 555).  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But leave to amend "is not to be granted automatically."  In re W. States Wholesale Nat. Gas Antitrust Litig.,

715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296–97 (9th Cir. 1990).

## III.   DISCUSSION

The Court addresses Defendants' motions to dismiss Plaintiffs' state-law claims in the following order: (1) breach of contract (claim III), (2) breach of the covenant of good faith and fair dealing (claim IV), and (3) fraud (claim V).

### A.   Breach of Contract (Claim III)

The Court first addresses whether Defendants are immune from contract claims pursuant to Government Code section 815, and then whether Plaintiffs plead sufficient facts to state a claim for breach of contract.[2]

#### 1.   Immunity

Defendants argue that they are immune from Plaintiffs' breach of contract claim. CCCOE Mot. at 13; PUSD Mot. at 11. They cite Government Code section 815(a), which provides that "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815. Plaintiffs respond that when a public entity forms a contract with an individual, it is liable for breach. Opp'n to CCCOE (dkt. 42) at 9.

---

[2] In its motion to dismiss, PUSD also argued, as it had in its prior motion to dismiss, that Plaintiffs did not allege compliance with the California Government Tort Claims Act. Mot. at 12. Because the FAC cures this issue, PUSD withdrew this argument. Reply (dkt. 45) at 2.

Government Code section 814 states that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." Cal. Gov't Code § 814. This section clarifies that Government Code section 815 does not apply to contracts. "The doctrine of sovereign immunity has not protected public entities in California from liability arising out of contract. This section makes clear that this statute has no effect on the contractual liabilities of public entities or public employees." Roe v. State of California, 94 Cal. App. 4th 64, 69 (2001) (quoting Arthur L. Sachs, Inc. v. City of Oceanside, 151 Cal. App. 3d 315, 320 (1984)). Because of this rule, courts hold that "[w]hen the state makes a contract . . . it is liable for a breach of its agreement . . . and the doctrine of governmental immunity does not apply." Id. (quoting E.H. Morrill Co. v. State of California, 65 Cal. 2d 787, 794 (1967)). Because a settlement agreement is a contract, see id. at 73, Section 815(a) does not grant immunity to Defendants. Accordingly, Defendants are not immune from Plaintiffs' breach of contract claim.

### 2. Breach

To state a breach of contract claim, a plaintiff must allege (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). In the FAC, Plaintiffs plead the requisite elements: (1) that the parties entered a contract by signing the Agreement; (2) that Plaintiffs performed by withdrawing legal claims against Defendants; (3) that Defendants breached the agreement; and (4) that the breach resulted in damage to Plaintiffs. FAC ¶¶ 121–25. Defendants only dispute the third element, arguing that the FAC does not adequately state that they breached the agreement. CCCOE Mot. at 14; PUSD Mot. at 15. Plaintiffs allege the following breaches: (1) failure to obtain a backup nurse; (2) failure to replace the LVN; (3) failure to deliver equipment; (4) unreasonable delay in delivery of A.L.'s Rifton Chair and Strander; (5) failure to include a backup nurse and LVN in the familiarization process; and (6) failure to hold monthly meetings with an LVN. FAC ¶ 123.

1  CCCOE argues that the FAC fails to state a claim against it because PUSD was
2  responsible for obtaining a backup nurse (breach 1), replacing the LVN (breach 2), and
3  delivering the equipment (breaches 3 and 4). Mot. at 14. CCCOE states that PUSD's
4  performance was a prerequisite for its performance to include the LVN and backup nurse
5  in the familiarization process (breach 5) and to hold monthly meetings with the LVN
6  (breach 6). Id. PUSD similarly contends that the FAC is vague as to the obligations of the
7  parties to the Agreement and the culpability of the respective Defendants. Mot. at 15.

Defendants are incorrect: The Agreement is clear that both Defendants promised to implement the August 2019 IEP. It specifies that while "CCCOE and PUSD both have obligations individually and separately to Student and that while PUSD is ultimately responsible for the provision of Student's FAPE, CCCOE recognizes that it must work collaboratively with PUSD and must also ensure that the operative IEP is followed and implemented pursuant to this Agreement."[3] FAC Ex. 2 at 4.[4] The IEP stated that A.L. required specialized equipment, a 1:1 LVN/aide, and a familiarization process with a 1:1 LVN/aide. FAC Ex. 1 at 33–37. If, as Plaintiffs allege, Defendants failed to provide a 1:1 LVN/aide and equipment, both Defendants breached the contract because they each agreed to implement the IEP. See FAC Ex. 2 at 4. Accordingly, Plaintiffs plead "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

Thus, the Court denies Defendants' motions to dismiss Plaintiffs' breach of contract claim.[5]

---

[3] The Agreement uses similar language elsewhere, such as stating that "PUSD and CCCOE will collaborate to ensure that Student has access to all appropriate and useable equipment." FAC Ex. 2 at 13.

[4] While the parties do not address whether the Agreement and IEP are incorporated by reference, they are attached to the complaint and thus "part of the complaint itself." See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

[5] The parties debate whether Defendants are subject to joint and several liability. Opp'n to CCCOE at 14; Opp'n to PUSD (dkt. 43) at 11–12; CCCOE Reply (dkt. 44) at 5–6; PUSD Reply at 3–4. Because Plaintiffs plead facts demonstrating that both Defendants are liable for breach, the Court need not resolve this issue at this stage.

### B.     Breach of Good Faith (Claim IV)

Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by inducing Plaintiffs' assent to the Agreement with false promises and failing to perform their obligations under the Agreement.  FAC ¶ 128.  Defendants argue that the FAC fails to allege with specificity how Defendants frustrated the purpose of the contract.[6] CCCOE Mot. at 16; PUSD Mot. at 17.

"[T]he implied covenant operates to protect the express covenants or promises of [a] contract." McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 806 (2008). Importantly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." Id. Whether the implied covenant of good faith has been breached is typically a question of fact. Hicks v. E.T. Legg & Assocs., 89 Cal. App. 4th 496, 509 (2001) ("The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference [can] be drawn from the evidence.") (internal quotations and citations omitted) (alteration in original).

Moreover, a breach of the covenant of good faith and fair dealing is "prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).  If the allegations of a breach of good faith "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Id.

Plaintiffs fail to plead facts that demonstrate Defendants' failure to discharge contractual responsibilities by a "conscious and deliberate act." See id.  First, Plaintiffs

---

[6] While Defendants restated the immunity argument made in opposition to the breach of contract claim, they do not have immunity because this claim is based in contract. See CCCOE Mot. at 13; PUSD Mot. at 11; supra Section III.A.I.  In addition, PUSD made and withdrew its argument that Plaintiffs failed to comply with the California Government Tort Claims Act. See Mot. at 12; Reply at 2; supra note 2.

8

base their claim in Defendants' immediate nonperformance of the Agreement. FAC ¶ 128. These allegations do not "go beyond the statement of a mere contract breach" and seek the same relief claimed in the companion contract cause of action. See Careau, 222 Cal. App. 3d at 1395. Next, Plaintiffs claim that "on information and belief" Defendants made "false promises" to convince Plaintiffs to sign the Agreement. FAC ¶ 128. But Plaintiffs do not plead additional acts that Defendants took, instead relying on the same ones alleged in the breach of contract claim. While Plaintiffs claim that the additional act is that Plaintiffs made false promises to induce assent to contract, this allegation is a "conclusory statement" that does not satisfy the requirements of Rule 12(b)(6) because Plaintiffs do not allege why those promises were false at the time they were made. See Iqbal, 556 U.S. at 678. Finally, because "only one inference [can] be drawn from the evidence," which is that Defendants did not violate the covenant of good faith and fair dealing, the Court decides this issue as a matter of law. See Hicks, 89 Cal. App. 4th at 509.

Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim. Because Plaintiffs may plead additional facts that give rise to this claim, the Court grants leave to amend.

### C.  Fraud (Claim V)

The Court first addresses whether Defendants are immune from a fraud claim under Government Code section 818.8, and then whether Plaintiffs' pleading satisfies Federal Rule of Civil Procedure 9(b).[7]

#### 1.  Immunity

Defendants argue that they are immune from Plaintiffs' fraud claim pursuant to Government Code section 818.8, which states that a public entity "is not liable for an

---

[7] CCCOE additionally argues that Plaintiffs fail to establish a "causal nexus" between the alleged fraud and Defendants' employees' work. Mot. at 17. It is mistaken. A "causal nexus" exists when the act is "an outgrowth" of the employee's work. Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291, 297–98 (1995). Because the CCCOE and PUSD representatives who signed the Agreement were acting on behalf of their employers, there was a "causal nexus" such that these acts were "an outgrowth" of their work. See id.

injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." CCCOE Mot. at 17; PUSD Mot. at 19; Cal. Gov't Code § 818.8. Plaintiffs counter that this section does not apply because the claim is based in contract. Opp'n to CCCOE at 23.

As discussed previously, Government Code section 814 states that these codes do not apply to "liability based on contract." Cal. Gov't Code § 814. Instead, public entities are not immune where a "pleading states causes of action in contract on the basis of the alleged fraudulent breach." E.H. Morrill Co. v. State of California, 65 Cal. 2d 787, 794 (1967) (quoting Souza & McCue Constr. Co. v. Superior Ct. of San Benito Cnty., 57 Cal. 2d 508, 511 (1962)). Whether the action is in contract or tort depends "upon the nature of the right sued upon," such that "[i]f based on breach of promise it is contractual." Arthur L. Sachs, Inc., 151 Cal. App. 3d at 322.

The Court finds that Plaintiffs bring this fraud cause of action in contract. Plaintiffs allege that Defendants made false promises in the Agreement and fraudulently induced Plaintiffs to release their claims, which bases this cause of action in contract. FAC ¶¶ 130–34. Accordingly, Defendants are not immune from this fraud claim under Section 818.8.

### 2. FRCP 9(b)

Defendants argue that Plaintiffs' fraud cause of action fails to satisfy Federal Rule of Civil Procedure 9(b)'s requirement because Plaintiffs fail to plead "facts explaining why the statement was false when it was made." CCCOE Mot. at 17. Plaintiffs respond that there is less specificity required when the other party has all the information, and that Defendants have engaged in a pattern of entering into settlement agreements that they do not intend to perform. Opp'n to PUSD at 16–17; Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal., 245 Cal. App. 4th 821, 838 (2016).

Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When a

1  claim is grounded in fraud, and its allegations fail to satisfy the heightened pleading
2  requirements of Rule 9(b), a court may dismiss the claim on a Rule 12(b)(6) motion.  Vess
3  v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b) requires "an
4  account of the 'time, place, and specific content of the false representations as well as the
5  identities of the parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756,
6  764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir.
7  2004)).  This requirement means that fraud claims "must be accompanied by 'the who,
8  what, when, where, and how' of the misconduct charged."  Vess, 317 F.3d at 1106
9  (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

Moreover, to allege fraud with sufficient particularity under Rule 9(b), "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1).  It is insufficient to "set forth conclusory allegations of fraud . . . punctuated by a handful of neutral facts."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Rather, plaintiffs must set forth "specific descriptions of the representations made, [and] the reasons for their falsity."  Blake v. Dierdorff, 856 F.2d 1365, 1369 (9th Cir. 1988).  The need for an explanation of falsity is paramount because "[t]he fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false."  In re GlenFed, 42 F.3d at 1549.  To meet this standard, plaintiffs can provide "contemporaneous statements or conditions to make that demonstration."  Id.  Finally, there are "certain exceptions" that mitigate Rule 9(b), such as when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy."  Tenet, 245 Cal. App. 4th at 838 (quoting Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 217 (1983)).

The Court finds that Plaintiffs do not sufficiently plead facts that meet Rule 9(b)'s standard because Plaintiffs omitted the reasons that Defendants' statements were false at

11

the time they were made. Plaintiffs allege that "[o]n information and belief, Defendants did not intend to perform their promises" and that PUSD has a "pattern and practice" of entering settlement agreements to have parties release claims. FAC ¶¶ 131, 136. Such allegations do not specify why Defendants' promises to abide by the Agreement were false at the time they signed the Agreement. Instead, Plaintiffs rely on actions that Defendants took after signing the agreement to support their claim. Without further specificity, these allegations are "conclusory statements" that do not satisfy the requirements of Rule 12(b)(6). See Iqbal, 556 U.S. at 678. Ultimately, Plaintiffs' showing that Defendants' statements and actions are different does not "necessarily amount to an explanation" as to why the earlier statements were false. See In re GlenFed, 42 F.3d at 1549. Without "contemporaneous statements or conditions" to demonstrate that those statements were false when they were made, Plaintiffs fail to meet the particularity requirement of Rule 9(b).[8] See id.

Accordingly, Plaintiffs have not sufficiently alleged the "who, what, when, where, and how" for this cause of action. See Vess, 317 F.3d at 1106. Thus, the Court grants Defendants' motions to dismiss Plaintiffs' fraud claim. Because Plaintiffs could plead facts sufficient to satisfy Rule 9(b), the Court grants leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions to dismiss as to Plaintiffs' claim for breach of contract (claim III), GRANTS both motions to dismiss as to Plaintiffs' claim for breach of the covenant of good faith and fair dealing (claim IV) with leave to amend, and GRANTS both motions to dismiss as to Plaintiffs' claim for fraud (claim V) with leave to amend. Plaintiffs may file an amended complaint within 21 days

---

[8] Plaintiffs' reliance on Tenet is misplaced. Even if Defendants did in fact "necessarily possess full information concerning the facts of the controversy" and the lower standard applied here, the Tenet court held that "less specificity" was required, not no specificity. Tenet, 245 Cal. App. 4th at 838. Plaintiffs do not plead any specificity as to why the statements Defendants made when entering the Agreement were false at the time they were made. They therefore do not meet even the lesser requirement articulated in Tenet.

of this order.

**IT IS SO ORDERED.**

Dated: February 3, 2023

CHARLES R. BREYER
United States District Judge